UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **BRANDY A. ANDAZOLA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-10-S-316-NW |
| | ) |
| **LOGAN'S ROADHOUSE, INC.,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action is before the court on plaintiff's motion for sanctions, filed pursuant to Federal Rule of Civil Procedure 37(c), and based upon the allegation that defendant failed to produce a "full and complete copy" of the personnel files for Thomas Moody and Peter Austin.[1]

### I. FACTUAL SUMMARY AND PROCEDURAL HISTORY

Plaintiff, Brandy Andazola, is a former employee of defendant, Logan's Roadhouse, Inc. She alleged that defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by twice failing to promote her to a General Manager position because of her sex, and by subsequently terminating her

---

[1] Doc. no. 41 (Motion for Sanctions), at 25. Document number 41 also includes a response in opposition to the defendant's motion for leave to file a reply in support of its motion for summary judgment (doc. no. 40) and a response in opposition to defendants motion to strike (doc. no. 40). Those motions were resolved by the memorandum opinion and order granting in part and denying in part defendant's motion for summary judgment (doc. no. 48) and the unnumbered margin order electronically "stamped" on the case docket sheet on May 26, 2011.

employment — either because of her gender, or in retaliation for complaints about gender discrimination and sexual harassment in the workplace.[2] Plaintiff also alleged that defendant violated the Equal Pay Act of 1963 (and, arguably, Title VII) by paying her less than a similarly-situated male employee.[3] In addition to those federal claims, plaintiff alleged that defendant violated state laws by condoning sexual harassment, failing to properly respond to complaints of sexual harassment, and making false, harmful statements about plaintiff.[4]

The court entered a scheduling order providing that, in addition to other deadlines, the parties must complete discovery by November 12, 2010.[5] Following the close of discovery, defendant moved for summary judgment on all claims.[6]

After the close of discovery and after defendant filed its motion for summary judgment, and without first filing a motion to compel, plaintiff filed the present motion for sanctions on May 9, 2011.[7]

On April 10, 2012, this court entered summary judgment in favor of defendant on all claims *except* plaintiff's Title VII disparate treatment claim for denial of her

---

[2] *See* doc. no. 1 (Complaint) ¶¶ 27-43, at 6-8.

[3] *See id*. ¶¶ 30-36, at 7-8.

[4] *See id*. ¶¶ 44-67, at 9-16 (asserting state law claims for intentional infliction of emotional distress; negligent hiring, training, supervision, and retention; defamation; and invasion of privacy).

[5] Doc. no. 10 (Scheduling Order), at 1.

[6] *See* doc. no. 22 (Motion for Summary Judgment).

[7] *See* doc. no. 41 (Motion for Sanctions).

application for promotion to the position of General Manager of the Athens, Alabama "Roadhouse," and, her state-law "negligent hiring, training, retention, and supervision claim."[8]

## A. The Personnel Files

Thomas Moody and Peter Austin were two male employees of defendant, both employed at the same location at which plaintiff was employed, Logan's Roadhouse #312 in Florence, Alabama.[9] Peter Austin was the "Kitchen Manager," and Thomas Moody was an hourly-wage employee, initially hired as a server, but later promoted to a bartender position.[10] Plaintiff alleged that Moody and Austin committed acts of sexual harassment.[11]

Plaintiff alleged that she assisted another restaurant employee, Ginger Thompson, in lodging a written complaint against Moody.[12] Plaintiff also alleged that she complained about sexual harassment to David Rodriguez, defendant's "Regional

---

[8] *See* doc. no. 48 (Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment), at 69.

[9] *See id.* at 6-8.

[10] Doc. no. 23-2 (Plaintiff's Deposition), at 225-27; doc. no. 23-5 (Rodriguez Deposition), at 17-21, 40.

[11] Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment, at 6-8.

[12] *See* doc. no. 38-2 (Declaration of Ginger Thompson), at 1; *see also* Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment, at 8.

Manager" of the geographic area that encompassed Logan's Roadhouse # 312.[13] Finally, she alleged that she complained to Jim Edwards, who was the General Manager of Roadhouse #312 until the end of July 2008.[14]

Plaintiff's present motion for sanctions is based upon the allegation that defendant failed to produce a full and complete copy of Moody's personnel file. That allegation is, in turn, based upon the assertion that the sexual harassment complaint made by Ginger Thompson, the sexual harassment complaints that plaintiff lodged with Rodriguez and Edwards, and the sexual harassment complaints that plaintiff alleges she saw in Moody's personnel file, were not included within the personnel file produced by defendant.[15] Additionally, plaintiff alleges that "Rodriguez admits that Logan's has not produced a full and complete copy of Moody's personnel file."[16]

Plaintiff also moved for sanctions on the grounds that defendant "has not produced a full and complete copy of Austin's personnel file including, but not limited to, all of Austin's personnel evaluations."[17] Plaintiff appears to assert that Rodriguez admitted that defendant failed to produce Austin's personnel evaluations

---

[13] *See* Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment, at 6-9.
[14] *See id.*
[15] Motion for Sanctions, at 25.
[16] *Id.*
[17] *Id.*

4

by alleging that "Rodriguez first denied knowing anything about Austin's personnel evaluations and then admitted that he wrote Austin's personnel evaluations."[18]

When asked about the written complaint against Moody in her deposition, plaintiff testified that she assisted Thompson to draft and then file the document, and that it was placed "in [Moody's] personnel file."[19] Plaintiff elaborated that testimony in a declaration submitted in opposition to defendant's motion for summary judgment, saying that:

> Ginger Thompson ("Thompson"), an hourly employee at Logan's came to me as Assistant Manager and complained that Thomas Moody ("Moody") was sexually harassing her. I personally handled Thompson's sexual harassment complaint against Moody. I personally documented Thompson's complaint of sexual harassment against Moody. I personally placed the documentation pertaining to Moody's [*sic*] having sexually harassed Thompson in Moody's personnel file.
>
> At the time I documented Thompson's sexual harassment complaints against Moody and put that documentation in Moody's personnel file, I personally observed that there was documentation in Moody's file pertaining to two other sexual harassment complaints which had been made against him and documented in his personnel file.
>
> Logan's has failed to produce a full and complete copy of Moody's personnel file. A large portion of Moody's personnel file has either been destroyed, lost, or intentionally not produced by Logan's.[20]

Additionally, in a declaration submitted by Ginger Thompson in opposition to

---

[18] *Id.* at 25-26.

[19] Plaintiff's Depo., at 356-57.

[20] Doc. no. 38-1 (Plaintiff's Declaration), at 2-3.

defendant's motion for summary judgment, Ms. Thompson stated:

> Ms. Andazola assisted me in filing a formal written complaint with Logan's regarding Mr. Moody's have sexually harassed me [*sic*].
>
> I requested that my formal written complaint be placed in Mr. Moody's personal [*sic*] file. I requested that Logan's investigate my complaints against Mr. Moody. I requested that Logan's immediately take any and all appropriate action to stop Mr. Moody's sexually harassing me [*sic*].
>
> My written formal complaint against Mr. Moody was supposed to have been placed in Mr. Moody's personnel file and should be in his personnel file now.[21]

Rodriguez disputed plaintiff's allegations in his deposition, saying that she never lodged a sexual harassment complaint with him, and that he had no knowledge of any sexual harassment complaints having been made against either Moody or Austin.[22] Rodriguez admitted that, if sexual harassment complaints had been made, the personnel file of the alleged harasser should contain copies of the complaints.[23]

During his deposition, Rodriguez was presented with a copy of Moody's personnel file as it had been produced by defendant, and after reviewing the file he

---

[21] Doc. no. 38-2 (Declaration of Ginger Thompson), at 2.

[22] See Rodriguez Depo., at 72 (denying that plaintiff told him about Austin "pulling his shirt off at the bar at Logan's"), 86-87 (testifying that plaintiff "is not telling the truth" when asserting that she asked him to investigate her allegations that Peter Austin sexually harassed her, and that he "never received a complaint" from plaintiff, or from anyone else for that matter, accusing either Peter Austin or Thomas Moody of sexual harassment).

[23] *Id.* at 47-48.

stated that the only items that appeared to be missing from the file were a job application, testing materials, and training materials.[24] He also testified that, if employees had made sexual harassment complaints against Moody, as plaintiff alleges, he could not explain why copies of those complaints were not contained within the personnel file.[25]

The personnel files for all managerial employees at defendant's restaurants were stored at defendant's corporate headquarters in Nashville.[26] Thus, because Austin was employed as the "Kitchen Manager" at Restaurant #312, his personnel file would have been stored at defendant's corporate headquarters.[27] Rodriguez did not maintain an office in defendant's corporate headquarters, however; instead, his responsibilities included supervision of restaurants in Alabama, Arkansas, Tennessee, and Mississippi.[28] Rodriguez testified that, for that reason, he had never before seen a manager's personnel file and, thus, he did not know if the file produced to plaintiff was a full and complete copy of Austin's personnel file.[29] On the other hand, Rodriguez did prepare and sign personnel evaluations for managers at Roadhouse

---

[24] *Id.* at 46-47.

[25] *Id.* at 48.

[26] *Id.* at 60-61.

[27] *Id.*

[28] Rodriguez Depo., at 8-11; *see also* doc. no. 23-1 (Declaration of David Rodriguez) ¶ 4.

[29] Doc. no. 23-5 (Rodriguez Deposition), at 90.

#312.[30]

The personnel file for Austin produced by defendant contains several personnel evaluations, each of which bear the formal title of "Management Performance Appraisal."[31] However, the file does not contain a personnel evaluation for every year of Austin's employment. Further, not all of the personnel evaluations contained in Austin's file were signed by either Austin or his evaluator.[32] Specifically, the file contains eight personnel evaluations for Austin for the years 2001 through 2008.[33] Of the eight evaluations, four are signed by both Austin and the evaluator, while the remainder are not signed by either Austin or an evaluator.[34] Additionally, Rodriguez

---

[30] *Id.* at 96-98.

[31] *See* doc. no. 34-5, Ex. 2 (Austin's Personnel File), at 13-220.

[32] *Id.*

[33] *See id.* at 108-23, 125-46, 211-20.

[34] *See id.* The 2008 personnel evaluation that was produced states that it was conducted on November 16, 2008, by Rodriguez, and is not signed by either Austin or Rodriguez. *Id.* at 211-15. The 2007 personnel evaluation that was produced states that it was conducted on November 30, 2007, by Rodriguez, and is signed by both Austin and Rodriguez. *See* doc. no. 34-5, Ex. 2 (Austin's Personnel File), at 108-13. A second, unsigned copy of Austin's 2007 personnel evaluation was also produced by defendant. *See id.* at 216-20. The 2006 personnel evaluation that was produced states that it was conducted on October 17, 2006, by Jim Edwards who was "General Manager" of Roadhouse #312 at that time, and is signed by Austin and Edwards. *Id.* at 114-18. The 2005 personnel evaluation that was produced states that it was conducted on October 21, 2005, by Paul Tompkins who was "General Manager" of Roadhouse #312 at that time, and is signed by Austin and the evaluator who did not print his or her name, but presumably was Tompkins. *Id.* at 119-23. The 2004 personnel evaluation that was produced states that it was conducted on October 15, 2004, by Paul Tompkins, and is not signed by Austin or Tompkins. *Id.* at 125-31. The 2003 personnel evaluation that was produced states that it was conducted on November 8, 2003, the evaluator is not listed, and the evaluation is not signed by Austin or the evaluator. Doc. no. 34-5, Ex. 2 (Austin's Personnel File), at 132-37. The 2002 personnel evaluation produced states that it was conducted on October 9, 2002, by "Paul T.," presumably is Paul Tompkins, however the evaluation is signed by

8

testified that he *believes* he created a personnel evaluation for Austin in 2009, but no copy was produced.[35]

During Rodriguez's deposition, defense counsel stated they would check to ensure that the entirety of Austin's personnel file had been produced, and that, if there were in fact additional documents, they would immediately produce them.[36]

Four months after the close of discovery, and also after defendant had filed its motion for summary judgment, plaintiff's attorney sent defense counsel an email asking counsel to determine whether defendant had produced full and complete copies of the personnel files for Thomas Moody and Peter Austin.[37] Defendant's counsel responded, stating: "Thanks, Mike. We have looked into this further and located no other documents that are part of those personnel files. If there are particular documents that you believe are missing, please let me know."[38] Plaintiff's counsel never responded to that email, but instead filed the present motion for sanctions.[39]

---

Austin and "Andy Herman." *Id.* at 138-42. The 2001 evaluation that was produced states that it was conducted on October 20, 2001, by Paul Tompkins, and the signature page of the evaluation is missing. *Id.* at 143-46.

[35] Rodriguez Depo., at 98.

[36] *Id.* at 92.

[37] *See* doc. no. 43-1 (Correspondence of Counsel), at 1. The email was sent on March 11, 2011. *Id.*

[38] *Id.*

[39] *See* doc. no. 43 (Response to Motion for Sanctions), at 2; Correspondence of Counsel, at

9

**B.     The Requested Relief**

Plaintiff requests the following relief:

    5.  Andazola moves this Court to enter an order directing that it is a fact that Moody had three sexual harassment complaints in his file; that Andazola, as Moody's immediate supervisor, had placed at least one of the sexual complaints in Moody's personnel file on behalf of Thompson; that Thompson had filed a sexual harassment complaint against Moody; that Andazola had opposed Moody's being promoted to bartender because of his having three sexual harassment complaints in his personnel file; that Moody provided photographs which allegedly showed Andazola fraternizing; and, that Moody conspired with Edwards and Austin to get Andazola fired.

    6.  Andazola moves this Court to enter an order prohibiting Logan's from supporting its defenses.

    7.  Andazola moves this Court to enter an order striking Logan's Motion for Summary Judgment and all evidentiary matters filed in support thereof and/or denying Logan's Motion for Summary Judgment.[40]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 37 provides for sanctions when a party fails to comply with the rules of discovery or court orders entered on discovery issues. Specifically, Federal Rule of Civil Procedure 37(c)(1) provides:

    If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or

---

1-4.

[40] Doc. no. 41 (Motion for Sanctions), at 27.

at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion or after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(*i*)-(*vi*).

Fed. R. Civ. P. 37(c)(1).

The party seeking sanctions bears the burden of establishing a failure "to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). If the movant meets this burden, the party facing sanctions bears the burden to establish that the failure to disclose was "substantially justified" or "harmless." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 825 (11th Cir. 2009).

Included among the "appropriate sanctions" under Rule 37(c) are the "orders listed in Rule 37(b)(2)(A)(*i*)-(*vi*)," which are:

> (*i*) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (*ii*) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (*iii*) striking pleadings in whole or in part;

11

>>(*iv*) staying further proceedings until the order is obeyed;
>>
>>(*v*) dismissing the action or proceeding in whole or in part;
>>
>>(*vi*) rendering a default judgment against the disobedient party; or
>>
>>(*vii*) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

District courts have "broad discretion to fashion appropriate sanctions" for discovery abuses; even so, that discretion "is not unbridled." *United States v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997). The harshest sanctions of dismissing a claim or entering default judgment "ought to be a last resort — ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).

### III. DISCUSSION

Plaintiff's motion for sanctions is due to be denied because the evidence does not establish that defendant engaged in any conduct for which sanctions may be entered.

For sanctions to be entered under Federal Rule of Civil Procedure 37(c)(1), a party must fail "to provide information or identify a witness as required by Rule 26(a)

or (e), . . . ." Fed. R. Civ. P. 37(c)(1). Here, plaintiff asserts that defendant "failed to produce a full and complete copy of" Moody and Austin's personnel files.[41]

Plaintiff's motion does not discuss how defendant's conduct is a violation of Rules 26(a) or (e). Defendant asserts that the personnel files were disclosed pursuant to plaintiff's requests for the production of documents.[42] Rule 26(a) governs "Required Disclosures," and has no relation to *requests* for the production of documents. *See* Fed. R. Civ. P. 26(a). Thus, plaintiff's contention must be that defendant violated Rule 26(e), which provides in relevant part:

> (1) In General. A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e).

Thus, the motion for sanctions is based on an alleged failure by defendant to supplement the documents, specifically the personnel files of Moody and Austin,

---

[41] Motion for Sanctions, at 25.
[42] Response to Motion for Sanctions, at 2.

13

produced pursuant to plaintiff's request for the production of documents. Rule 34, which governs requests for the production of documents, provides:

> A party may serve on any other party a request within the scope of Rule 26(b):
>
> > (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

Fed. R. Civ. P. 34.

Plaintiff has failed to present sufficient evidence to establish that defendant has, or had, "possession, custody, or control" of any documents from the personnel files of Moody or Austin, and failed to produce those documents. While Rodriguez did testify that a job application, testing materials, and training materials appeared to be missing from Moody's file, Rodriguez did not testify that he had any knowledge of such items ever having been located within Moody's personnel file, or even existing. Similarly, while Rodriguez testified that he believed he created a personnel evaluation for Austin in 2009, he did not state that he had any knowledge of that evaluation ever being placed in Austin's personnel file, or any knowledge of the current whereabouts of the evaluation. Thus, based on the record before the court, the court must conclude that defendant produced the entire personnel files for Moody and Austin.

Furthermore, while plaintiff has not alleged spoliation,[43] defendant would be subject to sanctions if it destroyed or significantly altered evidence, *i.e.*, engaged in spoliation. *See Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975)). However, plaintiff has not presented any evidence to indicate that defendant destroyed any responsive documents.

In summary, plaintiff fails to present evidence establishing that defendant failed to produce or destroyed any responsive documents within its possession, custody, or control. Thus, sanctions are not warranted in this case.

Finally, and most importantly, plaintiff was not harmed by the absence of the documents which she alleges exist, but were not produced. Of those factual inferences that plaintiff requests the court enter as sanctions, the court made the majority of those inferences when ruling on defendant's motion for summary judgment. The court found that, viewing the facts in the light most favorable to plaintiff as the non-movant, Thompson made a sexual harassment complaint against

---

[43] "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)); *see also Black's Law Dictionary* 1401 (6th ed. 1991) (defining spoliation as "[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation").

Moody,[44] plaintiff assisted Thompson in making that complaint,[45] and Moody provided defendant with photographs which allegedly showed plaintiff fraternizing.[46]

Even if the court had made *all* of the inferences that plaintiff seeks, the ruling on defendant's motion for summary judgment would *not* have changed. Plaintiff still would have failed to show that male employees were guilty of the same, or nearly identical, misconduct as that she allegedly committed, yet were not terminated or were disciplined in different ways and, thus, summary judgment would still be entered on her Title VII termination claim.[47]

She also still would have failed to show that her termination was causally linked to the sexual harassment complaints she made or the assistance she rendered to Thompson in making a sexual harassment complaint.[48]

The factual inferences plaintiff asks the court to make also would not affect her failure to show that the legitimate, non-discriminatory reason defendant asserted for promoting Hank Luking rather than plaintiff — that Luking was more qualified due

---

[44] Doc. no. 48 (Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment), at 8.
[45] *Id.*
[46] *Id.* at 25.
[47] *See id.* at 35-40.
[48] *Id.* at 40-45.

to his experience serving as a "General Manager" at other Roadhouse restaurants — was pretextual.[49] Thus, summary judgment would still be entered on plaintiff's failure to promote claim for the position awarded to Hank Luking.

Finally, the factual inferences plaintiff asks the court to make are irrelevant to plaintiff's failure to show that defendant is liable for the conduct and words of Jim Edwards and Ordonez that allegedly form the basis for plaintiff's defamation and invasion of privacy claims and, thus, summary judgment would still be entered on those claims.[50]

### IV. CONCLUSION

For the reasons set forth herein, plaintiff's motion for sanctions is DENIED.

**DONE** and **ORDERED** this 15th day of May, 2012.

_____
United States District Judge

---

[49] Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment, at 45-52.

[50] *Id.* at 60-65.