## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BRANDY A. ANDAZOLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-316-NW** |
| | ) | |
| **LOGAN'S ROADHOUSE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDERS

The complaint filed by plaintiff, Brandy A. Andazola, alleged that defendant, Logan's Roadhouse, Inc., violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by failing to promote her to the General Manager positions at defendant's two restaurants in Florence and Athens, Alabama because of her sex.[1]  Plaintiff also accused defendant of violating Title VII by terminating her employment, either because of her gender, or in retaliation for her complaints about gender discrimination and sexual harassment in the workplace.[2] Plaintiff further alleged that defendant violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), (and, arguably, Title VII) by paying her less than a similarly-situated male employee.[3]

---

[1] *See* doc. no. 1 (Complaint).

[2] *Id.*

[3] *Id.*

In addition to her federal-law claims, plaintiff's complaint contained supplemental state-law claims for intentional infliction of emotional distress, negligent hiring, training, supervision, and retention, defamation, and invasion of privacy.  Plaintiff also accused defendant of condoning acts of sexual harassment, failing to properly respond to complaints of sexual harassment, and making false statements about plaintiff.[4]

This court entered summary judgment in favor of defendant on all of plaintiff's claims, except for:  her Title VII claim that she had been denied a promotion to the General Manager position of defendant's Athens, Alabama restaurant because of her sex;[5] and, the state-law negligent training, supervision, and retention claim predicated upon defendant's handling of plaintiff's complaints of sexual harassment against certain employees.[6]  The case has been pre-tried, and was docketed for trial on August

---

[4] *Id.*

[5] *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 45-54.

[6] *Id.* at 65-69.  As discussed in the memorandum opinion entered in response to defendant's motion for summary judgment, plaintiff's state law claim

> is based upon the assertion that defendant "negligently failed to discipline or terminate those employees [of its Florence, Alabama restaurant — *i.e.*, *Peter Austin*, the Kitchen Manager, and *Thomas Moody*, an hourly-wage employee who initially was hired as a server, but later had bartender functions added to his duties —] who actively harassed . . . [plaintiff]," failed to administer its policies against sexual harassment, failed to properly train its employees concerning [sexual] harassment, and failed to protect plaintiff from [sexual] harassment.

*Id.* at 66-67 (citation omitted, bracketed alterations supplied).

2

14, 2012, but was continued on the motion of plaintiff's attorney, who complained of eye ailments that required medical attention.

The action now is pending decision on nine pretrial motions.  Plaintiff moved for leave to serve a trial witness subpoena on defendant's former Regional Manager, David Rodriguez,[7] and for leave to file letters from plaintiff's counsel to defendant's counsel regarding the possibility of withdrawing the motion.[8]  In addition, defendant filed seven motions *in limine*.  Those motions seek:  to bifurcate the trial into "liability" and "damages" phases;[9] to exclude evidence of alleged expression of breast milk by defendant's Florence Kitchen Manager, Peter Austin;[10] to exclude evidence of alleged damages incurred by plaintiff after resignation;[11] to exclude evidence of alleged harassment of other employees and harassment not based on sex, including

---

[7] *See* doc. no. 63 (Motion for Leave to Serve Subpoena on David Rodriguez).

[8] *See* doc. no. 81 (Motion for Leave to File Letter Responses).

[9] *See* doc. no. 64 (Motion *in Limine* to Bifurcate Trial into "Liability" and "Damages" Phases).

[10] *See* doc. no. 65 (Motion *in Limine* to Exclude Evidence of Alleged Expression of Breast Milk by Peter Austin).

[11] *See* doc. no. 66 (Motion *in Limine* to Exclude Evidence of Alleged Damages Incurred by Plaintiff After Resignation).  Although defendant refers to the end of plaintiff's employment as a "resignation," this court found a genuine issue of material fact on the issue of whether plaintiff was fired or resigned from her position. *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 27-35.  However, that fact has no bearing on the resolution of defendant's present motion *in limine*.

any complaints of such harassment;[12] to exclude evidence of dismissed claims;[13] to exclude evidence of defendant's failure to promote plaintiff to the General Manager position of defendant's Athens restaurant;[14] and to exclude witnesses and exhibits not disclosed during discovery.[15]

Upon consideration of the pleadings and oral arguments of counsel, this court will deny both of plaintiff's motions, and, three of defendant's seven motions *in limine*: *i.e.*, the motion to bifurcate the trial into "liability" and "damages" phases; the motion to exclude evidence of Florence Kitchen Manager Peter Austin's expression of breast milk; and the motion to exclude evidence of defendant's failure to promote plaintiff to the General Manager position of defendant's Athens restaurant.  The court will grant two of the remaining motions *in limine*: *i.e.*, the motion to exclude evidence of alleged damages incurred by plaintiff after resignation; and the motion to exclude evidence of dismissed claims.  Defendant's motion *in limine* seeking the exclusion of evidence of the alleged harassment of other employees, and harassment not based on sex, will be granted in part and held in

---

[12] *See* doc. no. 67 (Motion *in Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment).

[13] *See* doc. no. 68 (Motion *in Limine* to Exclude Evidence of Dismissed Claims).

[14] *See* doc. no. 69 (Motion *in Limine* to Exclude Evidence of Athens Promotion).

[15] *See* doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery).

abeyance in part, pending the receipt of additional briefs from the parties.  Finally,
defendant's motion *in limine* seeking the exclusion of witnesses and exhibits not
disclosed during discovery will be granted in part, denied in part, and held in
abeyance with respect to one item of evidence.

## I.  PLAINTIFF'S MOTIONS

Plaintiff requests leave to serve a trial witness subpoena on defendant's former
Regional Manager, David Rodriguez,[16] and leave to file letters from plaintiff's
counsel to defendant's counsel regarding the possibility of withdrawing that motion.[17]
Plaintiff alleges that "[Rodriguez] is no longer employed with [defendant]; that
Rodriguez lives in Hernando, Mississippi; that Hernando, Mississippi is more than
100 miles from the federal courthouse in which this trial is set; and, that Rodriguez
is not subject to service of a trial subpoena within the district."[18]

Based upon "information and belief," plaintiff accuses defendant of entering
"into an agreement and/or understanding with managerial personnel who has [sic]
been fired from and/or voluntarily terminated from a managerial position [with
defendant], comparable to Rodriguez's managerial level, that such managerial

---

[16] *See* doc. no. 63 (Motion for Leave to Serve Subpoena on David Rodriguez).

[17] *See* doc. no. 81 (Motion for Leave to File Letter Responses).

[18] Doc. no. 63 (Motion for Leave to Serve Subpoena on David Rodriguez), at 1-2 (alterations
supplied).

personnel will not testify about anything having to do with [defendant], or something of that nature."[19]   In her motion for leave to serve a trial witness subpoena on Rodriguez, plaintiff asks this court:

> to instruct [defendant] to confirm or deny that Rodriguez was not fired and/or left the employment of [defendant] for the purpose of making Rodriguez unavailable to testify at the trial of the above-styled cause of action; . . .
>
> to instruct [defendant] to confirm or deny whether or not there is any contractual agreement, informal agreement, or understanding of any kind whatsoever — verbal, written, or otherwise — between [defendant] and Rodriguez that Rodriguez should not and/or will not appear to testify at the trial of the above-styled cause of action; and, . . .
>
> to instruct [defendant] to confirm or deny whether or not [defendant] will have Rodriguez at the trial of this cause of action to testify in person[.][20]

Finally, plaintiff seeks "authorization from this Court to serve a trial witness subpoena on Rodriguez for the purpose of obtaining Rodriguez's personal appearance at the trial of this case to testify if [defendant] is not going to have Rodriguez at the trial of this cause of action to testify in person."[21]

In her second motion, plaintiff also seeks leave to file letters from plaintiff's counsel to defendant's counsel regarding the possibility of withdrawing the above

---

[19] *Id.* at 2 (alterations supplied).

[20] *Id.* at 2-3 (alterations supplied).

[21] *Id.* at 4-5 (alteration supplied).

motion, "if [defendant] and Mr. Rodriguez will assure [plaintiff's counsel] that Mr. Rodriguez will be available to testify at any time [plaintiff] requests him to do so."[22]

In response, defendant alleges that it

has explained to Plaintiff on multiple occasions (both prior to and subsequent to the filing of the instant motion), there is no agreement — verbal or written, formal or informal — between [defendant] and David Rodriguez that would prevent or discourage Mr. Rodriguez from testifying in the current case. To the contrary, [defendant] wants Mr. Rodriguez to appear and testify in this matter.[23]

Defendant also claims that "[t]here is nothing to indicate that Mr. Rodriguez is unwilling to cooperate, appear, and testify . . . . He has already voluntarily appeared at a deposition in Florence, Alabama and agreed to voluntarily appear to testify . . . on August 14, 2012[, before the trial was continued at plaintiff's counsel's request].[24] Plaintiff has submitted no evidence to contradict defendant's contentions.

Federal Rule of Civil Procedure 45(b)(2)(D) permits a court to authorize the service of a subpoena on a witness ordinarily not subject to such service "on motion and for good cause, *if a federal statute so provides*." Fed. R. Civ. P. 45(b)(2)(D) (emphasis supplied). Plaintiff's motion relies on 18 U.S.C. § 1512(b), which makes

---

[22] Doc. nos. 81-1 and 81-2 (Letter from Plaintiff's Counsel to Defendant's Counsel), at 1 (alterations supplied); *see also* doc. no. 81 (Motion for Leave to File Letter Responses). Documents numbers 81-1 and 81-2 appear to be copies of the same letter.

[23] Doc. no. 80 (Response to Motion for Leave to Serve Subpoena on David Rodriguez), at 1 (alterations supplied).

[24] *Id.* at 2 (alterations supplied).

7

it a federal crime to engage in witness tampering.[25]  However, the record is devoid of any *evidence* that defendant violated 18 U.S.C. § 1512(b), or any other federal statute.

Further, even if this court admitted the letters from plaintiff's counsel to defendant's counsel regarding the possibility of withdrawing the motion for leave to serve a trial witness subpoena on former General Manager David Rodriguez, those letters would not cure the absence of a federal statute that authorizes this court to grant that motion.  Accordingly, this court will deny both of plaintiff's motions.

## II. DEFENDANT'S MOTIONS *IN LIMINE*

### A.   Motion to Bifurcate

Defendant moves to bifurcate the trial into "liability" and "damages" phases.[26]  Federal Rule of Civil Procedure 42(b) provides for bifurcation of trials "[f]or convenience, to avoid prejudice, or to expedite and economize[.]"  Fed. R. Civ. P. 42(b) (alterations supplied).  District courts have "broad discretion" in deciding whether to bifurcate.  *Harrington v. Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2001).  "While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth."  Adv. Comm. Notes to Fed. R. Civ. P. 42 (1966 Amends.).

---

[25] Doc. no. 63 (Motion for Leave to Serve Subpoena on David Rodriguez), at 3.

[26] Doc. no. 64 (Motion *in Limine* to Bifurcate Trial), at 1.

In its motion for bifurcation, defendant contends that "the issues of liability and damages are unrelated."[27]  Thus, "if . . . bifurcation is not ordered, time and resources would be devoted to testimony and evidence of Plaintiff's alleged damages when such evidence is only relevant if Plaintiff is <u>first</u> able to establish liability."[28]  In response, plaintiff claims that the "inextricably intertwined nature of the evidence in this case makes bifurcation of liability from damages unworkable and proof of liability and damages inseparable."[29]  Nevertheless, she does not explain *how* the evidence is "intertwined."

Even accepting defendant's argument that liability and damages are unrelated, the "observation that a jury determination of no liability would eliminate the need for a trial on damages is true in any negligence case — it does not advance the cause of bifurcation."  *See Brown v. Advantage Engineering, Inc*., 732 F. Supp. 1163, 1171 (N.D. Ga. 1990).  As in *Brown*, "separate trials would require [the parties] to recall several out-of-state witnesses, indicating that bifurcation would actually inhibit, rather than promote, efficient judicial administration."  *Id.* (alteration supplied).  One such witness is former Regional Manager David Rodriguez, the subject of the two motions discussed in Section II(A), *supra*.

---

[27] *Id.* at 2.

[28] *Id.* at 3 (emphasis in original).

[29] Doc. no. 71 (Response to Motion *in Limine* to Bifurcate Trial), at 3.

Further, defendant asserts that introducing evidence of plaintiff's emotional distress and defendant's financial condition before the jury decides the issue of liability "would serve only to invite a verdict based on sympathy and would be unfairly prejudicial to [defendant]."[30]   However, defendant has not explained why proper limiting instructions would not prevent such prejudice.  Defendant's argument "would support bifurcation in any negligence action brought by a sympathetic plaintiff.  The court is confident that with the aid of cautionary instructions, a jury will be able to fairly and impartially determine both liability and damages in a single trial."  *Brown*, 732 F. Supp. at 1171.  Accordingly, in the interests of efficiency and conservation of resources, the court will deny defendant's motion for bifurcation.

## B.   Motion to Exclude Evidence of Alleged Expression of Breast Milk

Defendant moves to exclude evidence of alleged expression of breast milk by Peter Austin, the "Kitchen Manager" of defendant's location in Florence, Alabama.[31] Plaintiff testified that Austin underwent a trans-gender sex change,[32] and that, during the conversion, "his" behavior became increasingly bizarre.  For example, one night in 2007, Austin exposed his "breast" and "squirted milk" in plaintiff's presence.[33]  On

---

[30] Doc. no. 64 (Motion *in Limine* to Bifurcate Trial), at 3-4 (alteration supplied).

[31] *See* doc. no. 65 (Motion *in Limine* to Exclude Evidence of Alleged Expression of Breast Milk by Peter Austin).

[32] Doc. no. 23-2 (Plaintiff's Deposition), at 233.

[33] *Id.*

another occasion that same year, Austin asked plaintiff to kiss him, and touch his "breasts."[34]

Defendant contends that evidence regarding the first incident, when Florence Kitchen Manager Peter Austin exposed his "breast" and "squirted milk" in plaintiff's presence, is not relevant to plaintiff's claims, because Austin's actions were not based on the sex of his observers.[35]  Defendant claims that plaintiff "admits that this alleged behavior was not directed exclusively toward Plaintiff or exclusively toward women,"[36] because she testified that Austin showed "*everybody* how he was lactating and pulled his boob out and squeezed his nipple and shot milk across the bar[.]"[37]

In conjunction with testimony that Florence Kitchen Manager Peter Austin asked *plaintiff* to kiss him, and to touch his "breasts,"[38] the evidence that Austin exposed his "breast" and "squirted milk" in the presence of *plaintiff and others* is susceptible to two interpretations.  The first is that Austin directed his actions at "everybody."[39]  The second is that Austin directed his actions at plaintiff, regardless of who else was present.  To permit the jury to resolve that factual dispute, the court

---

[34] *Id.* at 257.

[35] Doc. no. 65 (Motion *in Limine* to Exclude Evidence of Alleged Expression of Breast Milk by Peter Austin), at 1.

[36] *Id.*

[37] Doc. no. 23-2 (Plaintiff's Deposition), at 233-34 (alterations and emphasis supplied).

[38] *Id.* at 257.

[39] *See id.* at 233-34.

11

will deny the motion in *limine* to exclude evidence of Austin's expression of breast milk.

## C. Motion to Exclude Evidence of Post-Resignation Damages

Defendant moves to exclude evidence of front pay, back pay, lost benefits, and any other damages allegedly incurred by plaintiff after August 26, 2008, the date on which she submitted her letter of resignation.[40]  When considering defendant's motion for summary judgment, this court found a genuine issue of material fact on the question of whether plaintiff was fired or resigned her employment.[41]  Ultimately, however, that issue was rendered moot by the entry of summary judgment in favor of defendant on plaintiff's Title VII disparate treatment and retaliation claims based on her termination.[42]

---

[40] *See* doc. no. 66 (Motion *in Limine* to Exclude Evidence of Alleged Damages Incurred by Plaintiff After Resignation).

[41] This court's previous opinion framed the issue as follows:

[W]hen *an Alabama private employer*, who can fire an employee for *any reason* — a good reason, a bad reason, or no reason at all, so long as the basis for termination is not a violation of federal employment discrimination statutes — acts in a manner that communicates to a reasonably prudent employee that she is about to be terminated, and the employee subsequently resigns, does that amount to either a "constructive discharge," or an "adverse employment action" that rises to the level of an actual termination?

Doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 29 (alteration supplied, emphasis in original).  This court concluded that the question could not be answered as a matter of law.  *See id.* at 34-35.

[42] *Id.* at 35-40 (discussing plaintiff's Title VII disparate treatment claim), 40-45 (discussing plaintiff's retaliation claim).

"Although courts have defined 'front pay' in numerous ways, front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  Back pay is awarded to make persons whole for injuries suffered through past discrimination.  *See* 42 U.S.C. § 2000e-5(g)(1); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

If a plaintiff resigns or is discharged for a nondiscriminatory and nonretaliatory reason, she cannot recover front or back pay for any time after the end of her employment.  *See, e.g., Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1236-37 (10th Cir. 2000); *Harper v. Godfrey Co.*, 45 F.3d 143, 149 (7th Cir. 1995); *Davis v. Jackson County Port Authority*, 611 F.2d 577 (5th Cir. 1980);[43] *Teare v. RE/MAX of Georgia, Inc.*, No. 1:05-CV-1236, 2008 WL 4452356, *12 (N.D. Ga. Sept. 30, 2008).

This court previously held that, even if plaintiff could prove that she was fired, she could not prove that she was fired *for a discriminatory or retaliatory reason*.[44] Thus, plaintiff is not entitled to front pay or lost benefits for the period following the end of her employment.  Accordingly, the court will grant the motion *in limine* to

---

[43] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[44] *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 27-35 (discussing the issue of whether plaintiff resigned or was fired), 35-40 (discussing plaintiff's Title VII disparate treatment claim), 40-45 (discussing plaintiff's retaliation claim).

exclude evidence of alleged damages that plaintiff incurred after the end of her employment on August 26, 2008.  Plaintiff may only present evidence of so-called "compensatory damages" (mental anguish, pain, suffering) and back-pay damages incurred between the date in July of 2008 when defendant awarded the position of General Manager of its Athens, Alabama, restaurant to Nykael Stewart,[45] and August 26, 2008, when plaintiff tendered her resignation letter.[46]

### D.    Motion to Exclude Evidence of Harassment of Other Employees

Defendant moves to exclude evidence of:  the alleged harassment of other employees; harassment that was not based upon the sex of the person harassed; and, complaints about such harassment.[47]  In response, plaintiff argues *generally* that such evidence is relevant to her negligent training, supervision, and retention claim, because it shows that defendant "permitted and/or ratified a severe and pervasive atmosphere of sexual discrimination and harassment . . . and did not take effective action to stop such unlawful behavior."[48]  However, plaintiff does not identify *specific*

---

[45] *See* doc. no. 23-2 (Deposition of Brandi A. Andazola), at 208-10.

[46] *See*, e.g., *id*. at 47-48.

[47] Doc. no. 67 (Motion *in Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment), at 1.

[48] Doc. no. 73 (Response to Motion *in Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment), at 3.

evidence of harassment of other employees, harassment not based on the sex of the

person harassed, or complaints of such harassment that allegedly supports her claim.

The discussion of this motion must be divided into two parts.  On the one hand,

it is clear that evidence of harassment based upon some characteristic *other than the*

*sex of the person harassed* is *not relevant* to any of plaintiff's claims.

> Title VII does not prohibit profanity alone, however profane.  It does not prohibit harassment alone, however severe and pervasive.  Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex.  Because "[a] claim of sexual harassment [under Title VII] is a claim of disparate treatment," in order to prevail a plaintiff must show "that similarly situated persons not of [her] sex were treated differently and better."

*Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301-02 (11th Cir.

2007) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1254 n.3 (11th Cir. 1999)

(*en banc*)) (alterations in original).

> Although we examine the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute sexual harassment, the statements and conduct must be of a sexual or gender-related nature — "sexual advances, requests for sexual favors, [or] conduct of a sexual nature," — before they are considered in determining whether the severe or pervasive requirement is met.  *Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted.*

*Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (quoting

*Mendoza*, 195 F.3d at 1245) (alteration in original) (internal citations omitted).

15

Therefore, to that extent, the defendant's motion is due to be granted.

On the other hand, evidence of the harassment of other employees and complaints about such harassment requires a finer analysis.

The Alabama Supreme Court has held that, in order to hold a defendant liable under a negligent training and supervision claim predicated upon the underlying tortious conduct of the defendant's employee (*e.g.*, as in the present case, sexual harassment), *the plaintiff must first prove* that *she* was sexually harassed. In addition, she must show that her employer

> "(1) *had actual knowledge of* the tortious conduct of the offending employee *and that the tortious conduct was directed at and visited upon the complaining employee*; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation."

*Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (quoting *Potts v. BE & K Construction Co.*, 604 So. 2d 398, 400 (Ala. 1992)).

With regard to the requirement that plaintiff first prove that *she* was subjected to sexual harassment, the attorney for plaintiff is correct when observing that some courts have permitted a plaintiff to present so-called "me too" evidence that other female employees *also* suffered from sexual harassment based upon the theory that, "If it happened to them, it must have happened to *me, too*." *See Goldsmith v. Bagby*

16

*Elevator Co., Inc.*, 513 F.3d 1261, 1285-87 (11th Cir. 2008) (affirming a district court's decision to admit "me too" evidence because of its probative value in showing the defendant's intent to discriminate).  Cases such as the one just cited serve to demonstrate that district courts do not apply a blanket, *per se* rule excluding "me too" evidence, but, instead, determine the admissibility of such evidence in light of its relevance under Rule 401, and after weighing its comparative prejudice under Rule 403, "in the context of the facts and arguments in a particular case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008); *see also Goldsmith*, 513 F.3d at 1285-87.

Even so, more often than not, "me too" evidence is not admitted at trial because the probative value of such evidence is judged to be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  Indeed, "trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant." *Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009) (citing *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1988)); *see also McLaughlin v. Essette Pendaflex Corp.*, 50 F.3d 507, 512 (8th Cir. 1995) (noting that a plaintiff failed to prove

17

discrimination by presenting the testimony of witnesses who were not involved in the contested employment decision); *Sorenson v. City of Aurora*, 984 F.2d 349, 354-55 (10th Cir. 1993) (upholding the decision to exclude evidence that other female employees also complained of discrimination and retaliation because that evidence was irrelevant and confusing); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1984) (observing that the testimony of former corporate officers who were terminated was substantially outweighed by the danger of unfair prejudice); *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (upholding the decision to exclude evidence of another employment discrimination lawsuit against the defendant because of the high potential for unfair prejudice).

The difficulty with consideration of the present motion lies in the fact that plaintiff has not specified the evidence of alleged harassment of other employees and complaints about such harassment that she intends to offer at trial, much less articulated the probative value of such evidence. This court's review of plaintiff's evidence at summary judgment did not reveal any evidence of sexual harassment of other employees with a high probative value in relation to her negligent training, supervision, and retention claim. If plaintiff is permitted to offer such evidence, defendant would either be forced to defend its actions in each circumstance raised,

18

or leave the testimony of "me too" witnesses unrebutted.  Under either approach, the prejudice to defendant would considerably overshadow any relevance to plaintiff's case, as well as cloud dispositive issues, confuse the jury, and prolong trial proceedings.

Nevertheless, this court will afford plaintiff an opportunity to brief this issue more thoroughly.  If plaintiff intends to offer any evidence of alleged harassment of other employees and complaints about such harassment when this case is rescheduled for trial, then, not later than seven days from the date of this order, she must submit a brief describing in detail (and providing specific citations to the record submitted at summary judgment) each item of such evidence that she contends should be admitted at trial, *and*, explaining why the probative value of each such item of evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Fed. R. Evid. 403.  Defendant shall be allowed the same period to file a responsive brief.  Thereafter, unless this court desires oral argument, it will enter an order ruling upon the admissibility of each such item of evidence *in limine*, and no other evidence of that nature will be permitted at trial.

**E**.    **Motion to Exclude Evidence of Dismissed Claims**

Defendant moves to exclude evidence of plaintiff's five dismissed claims on

19

the grounds that such evidence is not relevant to the two remaining claims, and that its probative value is substantially outweighed by the risk of unfair prejudice, confusion, or delay.[49]   *See* Fed. R. Evid. 402 & 403.  Defendant filed the motion because, "[d]espite the dismissal of the majority of her claims, Plaintiff has now filed Amended Witness and Exhibit lists that include *more* witnesses and exhibits than she filed prior to summary judgment, including additional witnesses and exhibits that were never disclosed or discussed in discovery."[50]   In response, plaintiff argues that:

> The witnesses, documents, and evidence [plaintiff] requires to prove her two claims which are going to the jury are so inextricably intertwined with her claims which have been dismissed that [defendant's] motion and attempt to exclude such material, relevant, and probative evidence is due to be denied.  For this Court to limit [plaintiff's] ability to prove her claims, as urged by [defendant], would be tantamount to denying [plaintiff] her day in court.[51]

Even so, plaintiff does not explain *how* the evidence of her dismissed claims is "inextricably intertwined" with the evidence of her remaining claims, or *how* that evidence is "material, relevant, and probative" on any remaining issue.  Further, plaintiff makes no attempt to address defendant's five specific examples of evidence

---

[49] Doc. no. 68 (Motion *in Limine* to Exclude Evidence of Dismissed Claims), at 1.

[50] *Id.* at 2-3 (emphasis in original) (alteration supplied).  *See* doc. no. 60 (Plaintiff's Exhibit List); doc. no. 61 (Plaintiff's Witness List).

[51] Doc. no. 77 (Response to Motion *in Limine* to Exclude Evidence of Dismissed Claims), at 2 (alterations supplied).

that it contends is not relevant and, thus, not admissible.[52]  In accordance with the federal prohibition on admission of irrelevant evidence, *see* Fed. R. Evid. 402, this court will grant the motion *in limine* to exclude evidence that is relevant only to plaintiff's dismissed claims.

## F.   Motion to Exclude Evidence of Athens Promotion

Defendant moves to exclude evidence of plaintiff's sole remaining federal claim in this action:  *i.e.*, the claim "that [defendant] did not promote [plaintiff] to the position of General Manager of its Athens, Alabama restaurant in violation of Title VII."[53]  Defendant alleges that plaintiff failed to exhaust her administrative remedies with regard to that claim because she did not include the claim in her Equal Employment Opportunity Commission charge.[54]  Therefore, defendant argues that any evidence in support of the claim "would be irrelevant and serve only to confuse the jury."[55]

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement

---

[52] *See* doc. no. 68 (Motion *in Limine* to Exclude Evidence of Dismissed Claims), at 3-4 (listing examples of evidence of dismissed claims).

[53] Doc. no. 69 (Motion *in Limine* to Exclude Evidence of Athens Promotion), at 1 (alterations supplied).

[54] *Id.*

[55] *Id.*

that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."

*Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982) (footnote omitted).  "[A] plaintiff must generally allege in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'"  *Jackson v. Seaboard Cost Line Railroad Company*, 678 F.2d 992, 1010 (11th Cir. 1982) (quoting Fed. R. Civ. P. 9(c)) (alteration supplied).  Plaintiff has done so here.[56]

If defendant believed that plaintiff had not satisfied the administrative prerequisites for filing a Title VII claim, defendant's answer to plaintiff's complaint should have stated "that a condition precedent has not been fulfilled 'specifically and with particularity.'"  *Id.* (quoting Fed. R. Civ. P. 9(c)); *see also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1521 (11th Cir. 1991) (same).  Defendant filed an answer stating only that "Plaintiff's federal claims are barred and must be dismissed *to the extent that* Plaintiff has failed to exhaust her administrative remedies *and/or* has failed to assert those claims within the time limits set for doing so."[57]  By answering in general, equivocal terms, defendant fell far short of satisfying the Eleventh Circuit's requirement of pleading with "specificity."

In *Wilshin v. Allstate Insurance Co.*, 212 F. Supp. 2d 1360 (M.D. Ga. 2002),

---

[56] *See* doc. no. 1 (Complaint) ¶ 11 ("All administrative prerequisites for filing suit have been satisfied, and [plaintiff] is entitled to bring this action.") (alteration supplied).

[57] Doc. no. 5 (Answer), at 2 (emphasis supplied).

the defendant filed an answer stating that "Plaintiff's claims are barred by his failure to exhaust administrative remedies and satisfy conditions precedent prior to instituting this action." *Id.* at 1369.  The court held that "Defendant failed to elaborate on Plaintiff's failure to timely file — thereby this denial is nothing more than a general denial." *Id.* at 1370.  The answer filed by the defendant in this case was no more specific than the answer filed by the defendant in the *Wilshin* case; it likewise contained no dates or other support for the bare conclusion that "Plaintiff has failed to exhaust her administrative remedies."  Thus, this court similarly holds that defendant's answer amounted to nothing more than a "general" denial.

Further, defendant waived the lack of exhaustion of administrative remedies defense by failing to litigate that defense prior to filing its motion *in limine*.  *See id.* at 1368-70; *Zachery v. Crawford County Board of Eduation*, No. 5:06-CV-314, 2009 WL 2431954, *3 (M.D. Ga. Aug. 6, 2009).  The *Wilshin* defendant waived the lack of exhaustion defense by failing to request summary judgment on that defense for more than two years.  *Wilshin*, 212 F. Supp. 2d, at 1368-70.  The *Zachery* defendant waived the lack of exhaustion defense by waiting to seek dismissal on that defense until after the court had ruled on its motion for summary judgment.  *Zachery*, 2009 WL 2431954, at *2-3.  As in *Zachery*, the defendant in this case did not attempt to litigate the defense until several months after the partial denial of summary

23

judgement.

While this court would have *welcomed* defendant's administrative exhaustion argument on a motion to dismiss or for summary judgment, defendant waived that argument by failing to raise it until the eve of the first time that this case was set for trial. "A motion *in limine* is not the appropriate vehicle for asking that plaintiffs be barred from offering *any* evidence in support of their claims." *Huff v. Illinois*, No. 97-C-4568, 2003 WL 168630, *5 (N.D. Ill. Jan. 23, 2003) (emphasis supplied). Thus, it is proper for a court to deny a "motion *in limine* [that is really] an untimely motion for summary judgment." *Mickens v. Polk County School Board*, 195 F. App'x 928, 928 (11th Cir. 2006) (alteration supplied).

Accordingly, this court will deny the motion *in limine* to exclude evidence of defendant's failure to promote plaintiff to the General Manager position of defendant's Athens restaurant.

## G.   Motion to Exclude Non-Disclosed Witnesses and Exhibits

Finally, defendant moves to exclude witnesses and exhibits not disclosed during discovery, but included in plaintiff's witness and exhibit lists.[58]  A party who "fails to provide information or identify a witness as required by Rule 26(a) or (e), .

---

[58] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 1.

. . is not allowed to use that information or witness to supply evidence on a motion or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  In addition to the requirements of the Federal Rules of Civil Procedure that parties make initial disclosures and respond to interrogatories, requests for production, and requests for admission, *see* Fed. R. Civ. P. 26, 33, 34, & 36, Federal Rule of Civil Procedure 26 requires parties to "supplement or correct" their disclosures or responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).

"The burden is on the party facing the [discovery] sanctions . . . to make the requisite showing of harmlessness" under Federal Rule of Civil Procedure 37(c). *Abrams v. Ciba Specialty Chemicals Corp.*, No. 08-0068-WS-B, 2010 WL 779283, *29 (S.D. Ala. Mar. 2, 2010) (alteration supplied) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) (similar); *Harrison Bros. Dry Dock & Repair Yard, Inc. v. Pan Agri International, Inc.*, No. 08-0486-WS-B, 2009 WL 3273926, *3 (S.D. Ala. Oct. 9, 2009) ("The burden is on

25

the nondisclosing party to demonstrate . . . that its failure to disclose . . . is harmless.")).

The following discussion will apply the foregoing principles to each exhibit or witness challenged by defendant.

### 1.    Plaintiff's benefits information

Defendant claims that plaintiff failed to disclose evidence of her employment benefits, including a compact disc ("CD") called "Benefits in a Nutshell."[59]  Plaintiff misstates her burden under Rule 37(c) by contending that "[*defendant*] cannot demonstrate [that it suffered] any disadvantage and/or harm" from plaintiff's failure to produce that information.[60]

Even so, defendant gave plaintiff the documents describing her employment benefits.[61]  Further, defendant submitted a handbook containing information on plaintiff's benefits in support of its motion for summary judgment.[62]  Because plaintiff's failure to disclose such information is highly unlikely to harm defendant, this court will deny the motion to exclude that evidence.

---

[59] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[60] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 3 (alterations supplied).

[61] *Id.*

[62] *See* doc. 34-3 (Logan's Restaurant Management Handbook), at 28 *et seq.*

## 2.     "Muffy the Vampire Slayer" DVD

Defendant claims that plaintiff failed to disclose a digital video disc ("DVD") called "Muffy the Vampire Slayer."[63]  In response, Plaintiff contends:  that the DVD "is a sex video [that Florence Kitchen Manager] Peter Austin had around Logan's premises and gave to [plaintiff]"; that "[Florence Key Hourly Manager] Gina Fell knows about Peter Austin's giving [the DVD] to [plaintiff]"; and that "[plaintiff] will offer the . . . DVD as a visual aid — a demonstrative evidence item."[64]

None of plaintiff's statements address the issue of whether her failure to disclose the "Muffy the Vampire Slayer" DVD "was substantially justified or is harmless" as required by Federal Rule of Civil Procedure 37(c).  In order to assist this court in assessing whether the nondisclosure of the DVD was "harmless," the court will order plaintiff to submit two copies of the DVD to the court for *in camera* review.

## 3.     Plaintiff's EEOC charges

Defendant claims that plaintiff failed to disclose her "EEOC Charge or Charges . . . — to the extent this exhibit will include anything other than the single charge at

---

[63] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[64] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 4 (alterations supplied).

issue in this litigation."[65]  Plaintiff responds that she only filed one EEOC charge:

*i.e.*, the charge attached to her complaint.[66]  Accordingly, this court will deny as moot

the motion to exclude that evidence.

### 4.    Plaintiff's job search records

Defendant claims that plaintiff failed to disclose her job search records.[67]

Plaintiff's response to defendant's motion does not address that argument, and thus

concedes it.[68]  *See DIRECTV, Inc. v. Federal Communications Commission*, 110 F.3d

816, 829 (D.C. Cir. 1997) ("EchoStar/Directsat did not respond to the Commission's

argument against their standing, which we therefore take as conceded.")

In any event, this court granted the motion *in limine* to exclude evidence of

alleged damages that plaintiff incurred after the end of her employment.  *See* Part

II(C), *supra.*  The job search records are only relevant to show that plaintiff attempted

to mitigate those damages by seeking another position.

Because plaintiff has not borne her burden of showing that her failure to

---

[65] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[66] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 3 (citing Doc. no. 1 (Complaint), Exhibit A (EEOC Charge)).

[67] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[68] *See* doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery).

disclose her job search records "was substantially justified or is harmless" as required by Federal Rule of Civil Procedure 37(c), or that the records are relevant as required by Federal Rule of Civil Procedure 401, this court will grant the motion to exclude that evidence.

### 5.    Tim Anderson

Defendant claims that plaintiff failed to provide the substance of Tim Anderson's "knowledge" of relevant facts.[69]  Plaintiff responds that she "identified . . . Tim Anderson in her initial disclosures and answers to interrogatories."[70]  Further, plaintiff argues that she "discussed in detail what . . . Tim Anderson know[s] and [is] expected to testify about at pages 366-368 of her deposition (Doc. 34-2, p. 11)," and that she "testified many times, possibly on eleven pages of her deposition, regarding what Tim Anderson knows and is expected to testify about including, but not limited to, Doc. 34-2, pp. 9, 11."[71]

Plaintiff identified Anderson as a male manager at defendant's Florence location who showed favoritism to Candace Stapp, a female server.[72]  Plaintiff offers

---

[69] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[70] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 4.

[71] *Id.* (alterations supplied) (citing doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 11).

[72] Doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 9, 11.

no evidence that Anderson directed his actions at plaintiff, or that his favorable treatment of Stapp was based on her sex.[73]   Accordingly, this court will grant the motion to exclude his testimony.

### 6.   Gina Fell

Defendant claims that plaintiff failed to provide the substance of Gina Fell's knowledge.[74]  Plaintiff responds that she "identified Gina Fell as a key manager at Logan's in Florence in her initial disclosures and answers to interrogatories."[75] Further, plaintiff argues that she "discussed in detail what Gina Fell knows and is expected to testify about at pages 363-364 of her deposition (Doc. 34-2, p. 10)."[76]

When asked during plaintiff's deposition *why* she identified Gina Fell as a witness, however, plaintiff answered only that she "just put [Fell] down [because] she's a Key [Hourly] Manager[: *i.e.*, an hourly employee with additional responsibilities].  She's been there ten years.  She knows a lot."[77]  Counsel for defendant then asked whether plaintiff believed that Fell knew anything "in

---

[73] *See id.*

[74] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[75] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 3-4.

[76] *Id.* (citing doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 10).

[77] Doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 10 (alterations supplied).

particular" about the allegations in her complaint.[78]  Plaintiff responded that Fell "would be somebody you could ask anything to and she would be able to tell you . . . . She was just there.  She experienced everything.  I'm just saying she is a witness to everything."[79]

This court entered summary judgment in favor of defendant on all of plaintiff's claims, except her Title VII claim for the gender-based denial of her application for a promotion to the General Manager position of defendant's *Athens* restaurant, and her state-law negligent training, supervision, and retention claim based on defendant's handling of plaintiff's complaints of sexual harassment against certain employees.[80]  The dismissed claims included plaintiff's claim for the gender-based denial of her application for a promotion to the General Manager position of defendant's *Florence* restaurant.[81]

Further, in Part II(E), *supra*, this court granted the motion *in limine* to exclude evidence that is relevant only to plaintiff's dismissed claims.  As Gina Fell is employed at defendant's *Florence* location, plaintiff's general statement that Fell was "a witness to everything" is not sufficiently descriptive or explicit to identify Fell's

---

[78] *Id.*

[79] *Id.*

[80] *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment).

[81] *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment).

proposed testimony regarding plaintiff's remaining claims.  Because plaintiff has not convinced this court that Fell has any relevant knowledge, and has not borne her burden of showing that her failure to provide the substance of such knowledge was substantially justified or harmless, this court will grant the motion to exclude Fell's testimony.

## G.    "Jeff G.", Larry Long, and Deb Veras

Defendant claims that plaintiff failed to provide the substance of the knowledge of "Jeff G.," Larry Long, and Deb Veras.[82]  Plaintiff responds that she "identified Deb Veras, Larry Long, [and] 'Jeff G.' . . . in her initial disclosures and answers to interrogatories."[83]  (Plaintiff does not know the last name of the witness identified only as "Jeff. G."[84])  Further, plaintiff argues that she "discussed in detail what Deb Veras, Larry Long, [and] 'Jeff G.' . . . know and are expected to testify about at pages 366-368 of her deposition (Doc. 34-2, p. 11)."[85]

During that deposition, plaintiff testified that Veras holds the General Manager

---

[82] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[83] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 4 (alteration supplied).

[84] Doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 11.

[85] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 4 (alteration supplied) (citing doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 11).

position at defendant's Decatur restaurant, and that Long and "Jeff G." hold lower-level managerial positions at that restaurant.[86]  Plaintiff argues that she refused to promote an hourly employee named Thomas Moody to bartender at defendant's Florence restaurant because he sexually harassed unnamed female employees.  While plaintiff was in Decatur, Jim Edwards, the general manager of the Florence restaurant, called plaintiff and informed her that he was overriding her decision and offering Moody the bartender position.[87]  Plaintiff then discussed the situation with Veras, Long, and "Jeff G."[88]

During her deposition, plaintiff described the knowledge of those witnesses as follows:

> Q.   So the reason you've identified those three individuals is because they would have knowledge of the Thomas Moody bartender assignment?
>
> A.   The — they would have knowledge of the reason why I did not want him promoted and the fact that I was struggling with [Florence General Manager] Jim [Edwards] and [former Regional Manager] David [Rodriguez] over this.
>
> Q.   *And they would know the reasons why you didn't want Mr. Moody promoted because you told them why you didn't want Mr. Moody promoted?*

---

[86] Doc. no. 34-2 (Deposition of Brandy Andazola, Part II), at 11.

[87] *Id.*

[88] *Id.*

33

> A.     *I talked to them about it.*
>
> Q.     *But that's why?  Their knowledge would be based on what you told them?*
>
> A.     *Correct.*[89]

Federal Rule of Evidence 801 defines "hearsay" as meaning "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed R. Evid. 801(c).  "Hearsay is not admissible unless any of the following provides otherwise:   a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court."  Fed. R. Evid. 802 (alteration supplied).  Further, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602 (alteration supplied).

Deb Veras, Larry Long, and "Jeff G." are managers at defendant's *Decatur* Roadhouse whose only knowledge of the circumstances surrounding the promotion of Thomas Moody to bartender at the *Florence* Roadhouse is "based on what [plaintiff] told them."[90]  Thus, their testimony would necessarily constitute a hearsay retelling of their conversations with plaintiff, and would not be based upon their

---

[89] *Id.* (alterations and emphasis supplied).

[90] *Id.* (alteration supplied).

personal knowledge of Moody's promotion.  This court is not aware of any statute or rule that would permit the admission of such evidence.  Accordingly, this court will grant the motion to exclude their testimony.

### 8.   Elizabeth Love

Defendant claims that plaintiff did not identify witness Elizabeth Love "at any point during the discovery process."[91]  Plaintiff does not contend that she identified Love in either her initial disclosures or her answers to defendant's interrogatories.[92] Instead, plaintiff argues that she "discussed in detail what Elizabeth Love knows and is expected to testify about at page 266 of her deposition. (Doc. 34-1, p. 68)."[93]

On that page of her deposition, plaintiff testified only that Love is an hourly employee of defendant who appeared in a photograph with plaintiff.[94] On the day that former Regional Manager David Rodriguez allegedly took plaintiff's keys and advised her to resign because she was about to be fired, Rodriguez showed plaintiff that photograph as evidence that she had violated defendant's anti-fraternization

---

[91] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[92] *See* doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery).

[93] Doc. no. 75 (Response to Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 4 (alteration supplied) (citing doc. no. 34-1 (Deposition of Brandy Andazola, Part I), at 68).

[94] Doc. no. 34-1 (Deposition of Brandy Andazola, Part I), at 68.

policy.[95]

A review of plaintiff's deposition and response to defendant's motion *in limine* sheds no light on the substance of Love's knowledge. Because plaintiff has not established that Love has any relevant knowledge, and has not borne her burden of showing that her failure to provide the substance of such knowledge was substantially justified or harmless, this court will grant the motion to exclude Love's testimony.

## IX. ORDERS

For the reasons explained above, this court DENIES plaintiff's motion for leave to serve a trial witness subpoena on former Regional Manager David Rodriguez,[96] and, her motion for leave to file letters regarding the possibility of withdrawing that motion.[97]

The court GRANTS two of defendant's seven motions *in limine* — *i.e.*, the motion to exclude evidence of alleged damages incurred by plaintiff after resignation,[98] and the motion to exclude evidence of dismissed claims[99] — and no testimony or other evidence of such matters may be presented to the jury.

---

[95] *See id.* at 267-78; doc. no. 23-5 (Deposition of David Rodriguez), at 107-08, 140-41.

[96] Doc. no. 63 (Motion for Leave to Serve Subpoena on David Rodriguez).

[97] Doc. no. 81 (Motion for Leave to File Letter Responses).

[98] Doc. no. 66 (Motion *in Limine* to Exclude Evidence of Alleged Damages Incurred by Plaintiff After Resignation).

[99] Doc. no. 68 (Motion *in Limine* to Exclude Evidence of Dismissed Claims).

36

The court DENIES three of defendant's motions *in limine*: *i.e.*, the motion to bifurcate the trial into "liability" and "damages" phases;[100] the motion to exclude evidence of Florence Kitchen Manager Peter Austin's expression of breast milk;[101] and, the motion to exclude evidence of defendant's failure to promote plaintiff to the General Manager position of defendant's Athens restaurant.[102]

Defendant's motion *in limine* to exclude evidence of alleged harassment of other employees and harassment not based on sex, including any complaints of such harassment,[103] is granted in part, and held in abeyance in part.  On the one hand, the motion is GRANTED with respect to evidence of harassment based upon some characteristic *other than the sex of the person harassed*, because such evidence is *not relevant* to any of plaintiff's claims, and no such evidence may be offered at trial.

On the other hand, the motion is held in abeyance with regard to evidence of the harassment of employees other than plaintiff and complaints about such harassment.  If plaintiff intends to offer any such evidence when this case is rescheduled for trial, then, not later than seven days from the date of this order, she

---

[100] Doc. no. 64 (Motion *in Limine* to Bifurcate Trial into "Liability" and "Damages" Phases).

[101] Doc. no. 65 (Motion *in Limine* to Exclude Evidence of Alleged Expression of Breast Milk by Peter Austin).

[102] Doc. no. 69 (Motion *in Limine* to Exclude Evidence of Athens Promotion).

[103] Doc. no. 67 (Motion *in Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment).

must submit a brief describing in detail (and providing specific citations to the record submitted at summary judgment) each item of such evidence that she contends should be admitted at trial, *and*, explaining why the probative value of each such item of evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. Defendant shall be allowed the same period to file a responsive brief. Thereafter, unless this court desires oral argument, it will enter an order ruling upon the admissibility of each such item of evidence *in limine*, and no other evidence of that nature will be permitted at trial.

Finally, defendant's motion *in limine* to exclude witnesses and exhibits not disclosed during discovery[104] is GRANTED in part, DENIED in part, and held in abeyance with regard to one item of evidence. This court GRANTS the request to exclude the exhibit containing plaintiff's job search records, and GRANTS the request to exclude the testimony of Tim Anderson, Gina Fell, "Jeff. G.," Larry Long, and Deb Veras. This court DENIES the request to exclude the evidence of the plaintiff's benefits, and DENIES as moot the request to exclude the exhibit containing

---

[104] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery).

her EEOC charges.  That part of the motion seeking exclusion of the DVD entitled "Muffy the Vampire Slayer" is held in abeyance, pending *in camera* review.  Plaintiff is ORDERED to submit copies of that DVD to the court and defense counsel within seven days of the date of this order.

   **DONE** and **ORDERED** this 29th day of April, 2013.

                              _____
                              United States District Judge