FILED
2013 May-24  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BRANDY A. ANDAZOLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-316-NW** |
| | ) | |
| **LOGAN'S ROADHOUSE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

The complaint filed by plaintiff, Brandy A. Andazola, alleged, among other things, that defendant, Logan's Roadhouse, Inc., violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by failing to promote her to General Manager positions at defendant's two restaurants in Florence and Athens, Alabama because of her sex.[1]  Plaintiff also accused defendant of violating Title VII by terminating her employment, either because of her gender, or in retaliation for her complaints about gender discrimination and sexual harassment in the workplace.[2] Plaintiff further alleged that defendant violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (and, arguably, Title VII), by paying her less than a similarly-situated male employee.[3]  In addition to her claims based on federal law, plaintiff's complaint

---

[1] *See* doc. no. 1 (Complaint).

[2] *Id.*

[3] *Id.*

contained supplemental state-law claims for intentional infliction of emotional distress, negligent hiring, training, supervision, and retention, defamation, and invasion of privacy.  Plaintiff also accused defendant of condoning acts of sexual harassment, failing to properly respond to complaints of sexual harassment, and making false statements about plaintiff.[4]

This court entered summary judgment in favor of defendant on all of plaintiff's claims, except for:  her Title VII claim that she had been denied a promotion to the General Manager position of defendant's Athens, Alabama restaurant because of her sex;[5] and, the state-law negligent training, supervision, and retention claim predicated upon defendant's handling of plaintiff's complaints of sexual harassment against certain employees.[6]  As discussed in the memorandum opinion entered in response to defendant's motion for summary judgment, plaintiff's state law claim

> is based upon the assertion that defendant "negligently failed to discipline or terminate those employees [of its Florence, Alabama restaurant — *i.e.*, *Peter Austin*, the Kitchen Manager, and *Thomas Moody*, an hourly-wage employee who initially was hired as a server, but later had bartender functions added to his duties —] who actively harassed . . . [plaintiff]," failed to administer its policies against sexual harassment, failed to properly train its employees concerning [sexual] harassment, and failed to protect plaintiff from [sexual] harassment.[7]

---

[4] *Id.*

[5] *See* doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 45-54.

[6] *Id.* at 65-69.

[7] *Id.* at 66-67 (citation omitted, alterations supplied).

The case has been pre-tried, and was docketed for trial on August 14, 2012,[8] but was continued on the motion of plaintiff's attorney, who complained of eye maladies that required medical attention.[9]  In an effort to facilitate the resolution of this litigation, the court recently ruled on both of plaintiff's pretrial motions, and six of defendant's pretrial motions.[10] One request from defendant's final pending pretrial motion remains unresolved.[11]

As is evident from its title, defendant's "Motion *In Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment" challenges plaintiff's attempt to introduce two types of evidence:  *i.e.*, evidence of harassment of other employees; and, evidence of harassment not based on sex.[12]  This court granted the request to exclude the *second* type of evidence:  *i.e.*, evidence of harassment not based on sex.[13]

---

[8] *See* doc. no. 56 (Pretrial Order).

[9] *See* doc. no. 27 (Motion to Continue Trial).

[10] *See* doc. no. 87 (Memorandum Opinion and Order addressing both of plaintiff's pretrial motions, and six of defendant's pretrial motions); doc. no. 91 (Memorandum Opinion and Order addressing the admissibility of the DVD entitled "Muffy the Vampire Slayer).

[11] *See* doc. no. 67 (Motion *In Limine* to Exclude Evidence of Alleged Harassment of Other Employees and Harassment Not Based on Sex, Including Any Complaints of Such Harassment); doc. no. 87 (Memorandum Opinion and Order), at 19 (discussing the reasons for withholding a ruling on the request contained in document number 67 to exclude evidence of the alleged harassment of other employees and complaints of such harassment).

[12] Doc. no. 70 (Motion *in Limine* to Exclude Witnesses and Exhibits Not Disclosed During Discovery), at 2 n.1.

[13] Doc. no. 87 (Memorandum Opinion and Order), at 15-16.

However, the court withheld a ruling on the admissibility of the *first* type of evidence: *i.e.*, "Evidence of Alleged Harassment of Other Employees." Despite the fact that plaintiff had not "specified the evidence of alleged harassment of other employees and complaints about such harassment that she intends to offer at trial, much less articulated the probative value of such evidence,"[14] the court elected to "afford plaintiff an opportunity to brief this issue more thoroughly."[15]

## I.  DISCUSSION

The Alabama Supreme Court has held that, in order to hold a defendant liable under a claim based upon a theory of negligent training, supervision, or retention predicated upon the underlying tortious misconduct of one of the defendant's employees (*e.g.*, as in the present case, sexual harassment), *the plaintiff must first prove* that *she* was sexually harassed. In addition, she must show that her employer

> "(1) *had actual knowledge of* the tortious conduct of the offending employee *and that the tortious conduct was directed at and visited upon the complaining employee*; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation."

*Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (emphasis supplied) (quoting *Potts v. BE & K Construction Co.*, 604 So. 2d 398, 400 (Ala.

---

[14] *Id.* at 18.
[15] *Id.* at 19.

4

1992)).

With regard to the initial requirement — *i.e.*, that plaintiff prove *she* was personally subjected to sexual harassment — the attorney for plaintiff is correct when observing that some courts have permitted a plaintiff to present so-called "me too" evidence that other female employees *also* suffered from sexual harassment based upon a theory that, "if it happened to them, then it must have happened to *me, too*." *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1285-87 (11th Cir. 2008) (affirming a district court's decision to admit "me too" evidence because of its probative value in showing the defendant's intent to discriminate). Cases such as the one just cited serve to demonstrate that district courts do not apply a blanket, *per se* rule excluding "me too" evidence, but, instead, determine the admissibility of such evidence in light of its relevance under Rule 401, and after weighing its comparative prejudice under Rule 403 "in the context of the facts and arguments in a particular case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008); *see also Goldsmith*, 513 F.3d at 1285-87.

Even so, more often than not, "me too" evidence is not admitted at trial because the probative value of such evidence is judged to be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

5

evidence." Fed. R. Evid. 403. Indeed, "trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant." *Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009) (citing *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1988)); *see also McLaughlin v. Essette Pendaflex Corp.*, 50 F.3d 507, 512 (8th Cir. 1995) (noting that a plaintiff failed to prove discrimination by presenting the testimony of witnesses who were not involved in the contested employment decision); *Sorenson v. City of Aurora*, 984 F.2d 349, 354-55 (10th Cir. 1993) (upholding the decision to exclude evidence that other female employees also complained of discrimination and retaliation because that evidence was irrelevant and confusing); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1984) (observing that the testimony of former corporate officers who were terminated was substantially outweighed by the danger of unfair prejudice); *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (upholding the decision to exclude evidence of another employment discrimination lawsuit against the defendant because of the high potential for unfair prejudice).

Plaintiff would like to offer evidence of alleged harassment of other employees by Thomas Moody, an hourly-wage employee of defendant's Florence Roadhouse

6

who initially was hired as a server, but later had bartender functions added to his duties.[16]  According to plaintiff, Moody told sexual jokes, uttered gender slurs, and made offensive hand motions to *plaintiff and other female employees.*[17]  He also touched *female employees* in an inappropriate manner, ran his hands through their hair, and grabbed their buttocks.[18]

Plaintiff testified that she complained on unspecified dates to Regional Manager David Rodriguez about Moody's sexual harassment of her (plaintiff), as well as other female employees.[19]  Rodriguez, however, testified that he "never received a complaint" from plaintiff or anyone else accusing Moody of sexual harassment, and that plaintiff did not testify truthfully when saying that she complained to him about Moody's sexual harassment during an August 25, 2008 conference just prior to the end of her employment.[20]

Plaintiff also alleges that she assisted *another restaurant employee, Ginger Thompson*, to lodge a written complaint against Moody on some date that is not

---

[16] *See* doc. no. 92 (Brief), at 4-9.  The memorandum opinion addressing defendant's motion for summary judgment (document number 48) summarized plaintiff's allegations of sexual harassment by Moody at pages 8-9; and her allegations of complaints against Moody at page 9, note 34.

[17] Doc. no. 23-2 (Deposition of Brandy A. Andazola), at 258; doc. no. 38-2 (Declaration of Ginger Thompson), at 1.

[18] Doc. no. 23-2 (Deposition of Brandy A. Andazola), at 366.

[19] *Id.* at 258-59.

[20] Doc. no. 23-5 (Deposition of David Rodriguez), at at 40-41, 87, 123-24.

clearly stated in the evidentiary materials presented to this court, but which would have occurred sometime prior to Thompson's last date of employment in September of 2006.[21]  Plaintiff delivered Thompson's complaint to Paul Tompkins, who then was General Manager of the Florence Roadhouse, and Tompkins said that "he would let Jim Edwards handle it since . . . Thomas Moody and Jim Edwards were . . . very close friends."[22]  Afterwards, Moody's behavior improved "for a while."[23]

Plaintiff urges this court to admit the following evidence:  (a) evidence that Thomas Moody sexually harassed Ginger Thompson;[24] (b) evidence that defendant received two other complaints from other employees alleging that Moody engaged in sexual harassment; and (c) evidence that defendant failed to produce all three harassment complaints as part of Moody's personnel file.[25]  The court will address each type of evidence in turn.

## A.   Evidence that Thomas Moody Sexually Harassed Ginger Thompson,

---

[21] *See* doc. no. 38-2 (Declaration of Ginger Thompson), at 1 (stating that "I worked at Logan's Roadhouse in Florence, Alabama from approximately December 2005 to approximately September 2006"); *id.* at 2 (stating that plaintiff assisted Thompson in filing a formal written complaint about Moody's sexual harassment).

[22] Doc. no. 23-2 (Deposition of Brandy A. Andazola), at 356-58.

[23] Doc. no. 38-2 (Declaration of Ginger Thompson), at 2 ("Mr. Moody's behavior improved for a while after I filed my complaint and after he was talked to about his behavior.").  The implication of the caveat "for a while" is that defendant did not succeed in stopping the alleged harassment permanently.

[24] Doc. no. 92 (Brief), at 4-7.

[25] *Id.* at 7-9.

**Including Complaints of Such Harassment**

Plaintiff submitted the following declaration from Ginger Thompson in response to defendant's motion for summary judgment:

> I formerly worked at Logan's Roadhouse in Florence, Alabama. I worked at Logan's Roadhouse in Florence, Alabama from approximately December 2005 to approximately September 2006.
>
> Thomas D. Moody also worked at Logan's Roadhouse, Inc. in Florence, Alabama at the time I worked there.
>
> Mr. Moody sexually harassed me unbearably by making sexually explicit comments to me on the shifts on which we worked together which made me very uncomfortable and which made my work at Logan's very uncomfortable.
>
> I am married and was married at the time Mr. Moody sexually harassed me which made me even more uncomfortable.
>
> Brandy A. Andazola was an assistant manager at Logan's during the time I worked at Logan's.
>
> As Logan's policy required, I reported Mr. Moody's sexually harassing me to Ms. Andazola.
>
> Ms. Andazola assisted me in filing a formal written complaint with Logan's regarding Mr. Moody's have [sic] sexually harassed me.
>
> I requested that my formal written complaint be placed in Mr. Moody's personal file.  I requested that Logan's investigate my complaints against Mr. Moody.  I requested that Logan's immediately take any and all appropriate action to stop Mr. Moody's sexually harassing me.
>
> My written formal complaint against Mr. Moody was supposed to

9

have been placed in Mr. Moody's personnel file and should be in his personnel file now.

Mr. Moody's behavior improved for a while after I filed my complaint and after he was talked to about his behavior.[26]

In addition, plaintiff argues in the brief submitted in connection with the defendant's motion *in limine* that:

Ginger Thompson will testify that Moody sexually harassed her during the time she worked at Logan's. (*See* Doc. 38-2, pp. 1-2.) Moody made "sexually explicit comments" that made Thompson "uncomfortable." (*See id.*) Thompson will testify that she submitted a formal sexual harassment complaint to [defendant] through [plaintiff]. (*See id.*) [Plaintiff's] testimony will reflect that Thompson complained. (*See* Doc. 38-1, pp. 2-4.) [Plaintiff] documented this complaint in writing on behalf of [defendant]. (*See* Doc. 38-1, pp. 2-4; Doc. 38-2, pp. 1-2).[27]

Plaintiff also contends that:

This testimony is relevant to show that [Thomas] Moody had an "intent to discriminate" and that [defendant] "permitted a severe and pervasive atmosphere of . . . discrimination on its premises." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir.2008). This evidence has a tendency to make Moody's sexual harassment of [plaintiff] more probable than it would be without this evidence. See Fed. R. Evid. 401. It also has a tendency to show that harassment "was ongoing throughout her employment" and that "no action was taken to remedy the harassing behavior . . . despite . . . repeated complaints." (Doc. 48, pp. 68-69.)[28]

---

[26] Doc. no. 38-2 (Declaration of Ginger Thompson), at 1-2.

[27] Doc. no. 92 (Brief), at 4-5 (alterations supplied).

[28] *Id.* at 5 (footnotes omitted) (alterations supplied).

In that section of this court's memorandum opinion explaining the reasons for denying defendant's motion for summary judgment on plaintiff's state-law negligent training, supervision, and retention claim, this court held that

> plaintiff has presented evidence to show that *she* was sexually harassed by [Peter] Austin *and* [*Thomas*] *Moody*. She also presents evidence to show that she complained about the sexual harassment to [David] Rodriguez and [Jim] Edwards on multiple occasions. She presents evidence that the only actions defendant took to remedy the harassing behavior by Moody was that Edwards spoke to Moody, and no action was taken to remedy the harassing behavior by Austin despite her repeated complaints. Finally, she presents evidence that the harassment perpetrated by Moody and Austin was ongoing throughout her employment despite her complaints and defendant's actions.[29]

The Eleventh Circuit has "upheld the admission of coworker testimony in a sexual harassment context under [Federal] Rule [of Evidence] 404(b) to prove the defendant's 'motive, . . . intent, . . . [or] plan' to discriminate against the plaintiff." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (alterations supplied) (citing Fed. R. Evid. 404(b);[30] *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1532 (11th Cir. 1983)). The *Goldsmith* court affirmed a district court's decision to admit "me too" evidence because *both* the plaintiff *and* her

---

[29] Doc. no. 48 (Memorandum Opinion and Order on Summary Judgment), at 68-69 (emphasis and alterations supplied).

[30] Federal Rule of Evidence 404(b) provides that evidence of a defendant's crimes, wrongs, or other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

coworkers "were discriminated against *by the same supervisor*, . . . so the experiences of [the coworkers] are probative of [the supervisor's] intent to discriminate." *Id.* (emphasis and alterations supplied).

As in *Goldsmith*, both plaintiff and Ginger Thompson were allegedly harassed by the same employee, Thomas Moody. Thus, Thompson's experiences are likewise probative of Moody's intent to harass. Accordingly, this court will permit Ginger Thompson to testify: that Moody sexually harassed her during her employment with defendant; that she submitted a formal sexual harassment complaint to defendant through plaintiff; and that she requested that the complaint be placed in Moody's personnel file. Further, the court will permit plaintiff to testify: that Ginger Thompson complained of sexual harassment; and that plaintiff assisted Ms. Thompson to draft and file a formal complaint of harassment.

## B. Evidence That Defendant Received Two *Other* Complaints From *Other* Employees Alleging Sexual Harassment by Thomas Moody

With regard to evidence that defendant received two other complaints of sexual harassment against Thomas Moody, plaintiff argues that *she* "will testify at trial that *she* was aware of two other sexual harassment complaints that had been filed against Moody. (*See* Doc. 38-1, pp. 2-4.) She [alleges that at some point in time she]

12

personally [read the] complaints in Moody's personnel file.  (*See id.*)"[31]  Plaintiff

provides no further details regarding the alleged sexual harassment complaints,

including: the identity of the complainants; the nature of their respective allegations;

whether defendant investigated the allegations; whether defendant found the

allegations to be substantiated; and, if so, whether defendant took action to remedy

the harassment, and whether that response put an end to the harassment.

When allowing plaintiff an opportunity to brief the present issue more

thoroughly, this court specifically ordered that:

> If plaintiff intends to offer any evidence of alleged harassment of other
> employees and complaints about such harassment when this case is
> rescheduled for trial, then . . . she must submit a brief **describing in
> detail** (**and providing specific citations to the record submitted at
> summary judgment**) each item of such evidence that she contends
> should be admitted at trial, *and*, explaining why the probative value of
> each such item of evidence is not substantially outweighed by the danger
> of unfair prejudice, confusion of the issues, or misleading the jury.  *See*
> Fed. R. Evid. 403.[32]

Plaintiff's allegations regarding the *existence* of "two other sexual harassment

complaints that had been filed against Moody" without any elaboration about their

*contents* are not sufficient to permit the court to determine the relevance of those

complaints, or to compare their probative value to their potential for unfair prejudice.

---

[31] Doc. no. 92 (Brief), at 7 (footnote omitted) (emphasis and alterations supplied).

[32] Doc. no. 87 (Memorandum Opinion and Order), at 19 (italicized emphasis in original)
(boldface emphasis supplied).

*See* Fed. R. Evid. 401, 403.  Accordingly, this court will grant defendant's request to exclude that evidence.

## C.   Evidence That Defendant Failed to Produce the Two Complaints of Sexual Harassment Against Thomas Moody as Part of His Personnel File

That, however, is not the end of the discussion regarding the complaints of sexual harassment allegedly lodged against Thomas Moody by two other employees. Plaintiff also contends that she "*will argue* to the jury at trial that [the absence of the complaints from Moody's personnel file] represents intentional spoliation of evidence and that [defendant] is intentionally covering up the unlawful conduct of its agents."[33] Plaintiff's brief makes no mention of the fact that this court previously *denied* plaintiff's motion for discovery sanctions under Federal Rule of Civil Procedure 37(c) based on the allegation that defendant failed to produce a "full and complete copy" of the personnel files for Thomas Moody and Peter Austin, another employee of defendant's Florence Roadhouse, who allegedly engaged in sexual harassment.[34] The court reasoned that:

---

[33] *Id.* at 7 n.5 (emphasis and alterations supplied).  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)); *see also Black's Law Dictionary* 1401 (6th ed. 1991) (defining spoliation as "[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation").

[34] *See* doc. no. 49 (Order Denying Motion for Sanctions).

Plaintiff has failed to present sufficient evidence to establish that defendant has, or had, "possession, custody, or control" of any documents from the personnel files of Moody or Austin, and failed to produce those documents. While [former General Manager David] Rodriguez did testify that a job application, testing materials, and training materials appeared to be missing from Moody's file, Rodriguez did not testify that he had any knowledge of such items ever having been located within Moody's personnel file, or even existing. Similarly, while Rodriguez testified that he believed he created a personnel evaluation for Austin in 2009, he did not state that he had any knowledge of that evaluation ever being placed in Austin's personnel file, or any knowledge of the current whereabouts of the evaluation. Thus, *based on the record before the court, the court must conclude that defendant produced the entire personnel files for Moody and Austin*.

Furthermore, while plaintiff has not alleged spoliation, defendant would be subject to sanctions if it destroyed or significantly altered evidence, *i.e.*, engaged in spoliation. *See Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975)). However, *plaintiff has not presented any evidence to indicate that defendant destroyed any responsive documents.*[35]

Even so, the fact that a party does not introduce sufficient evidence to support a finding of spoliation *by a judge* does not <u>necessarily</u> foreclose that party from presenting evidence of the alleged spoliation *to a jury*. *See United States v. Wise*, 221 F.3d 140, 156-57 (5th Cir. 2000) (affirming a district court's refusal to issue an adverse jury instruction on the defendants' spoliation argument, but allowing them to present that argument to a jury); *Bell Aerospace Services v. U.S. Aero Services*, No.

---

[35] *Id.* at 14 (footnote omitted) (emphasis and alteration supplied).

1:09-CV-141-MHT [WO], 2010 U.S. Dist. LEXIS 19879, *9 (M.D. Ala. Feb. 18, 2010) ("Nothing in this ruling [refusing the plaintiff's request for spoliation sanctions] prevents Plaintiff from presenting evidence and argument to a jury that the reformatting of the laptop destroyed evidence and resulted in prejudice to the Plaintiff. Plaintiff may let the jury make its own inference as to whether the evidence on the laptop would have supported its claims.") (alteration supplied).

As discussed in Section I(B), *supra*, however, plaintiff has provided no meaningful information regarding the alleged sexual harassment complaints against Thomas Moody, including, most importantly, the identity of the complainants and the nature of their allegations. Accordingly, plaintiff has no basis for arguing to a jury that defendant intentionally destroyed documents that she cannot identify by even something so simple as *the names* of the alleged complainants.

Further, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Permitting plaintiff to present evidence that defendant failed to produce complaints allegedly filed by unidentified complainants would unfairly prejudice defendant and confuse the issues by inviting jurors to speculate regarding the complaints' contents.

16

Accordingly, this court will grant defendant's request to exclude that evidence.

## II.  CONCLUSION AND ORDER

For the reasons explained above, it is ORDERED that Ginger Thompson *may testify*:  that Moody sexually harassed her during her employment with defendant; that, with the assistance of plaintiff, she submitted a formal sexual harassment complaint to defendant; and that she requested that the complaint be placed in Moody's personnel file.  Further, plaintiff *may testify*: that Thompson complained of sexual harassment; and that plaintiff documented her complaint in writing on behalf of defendant.  Plaintiff *may not* testify that defendant received *other* complaints from *other*, unnamed, unidentified employees alleging sexual harassment by Thomas Moody, or that defendant failed to produce those harassment complaints as part of his personnel file.

**DONE** and **ORDERED** this 24th day of May, 2013.

United States District Judge